**BARRETT v. WILSON et al.***

No. 4610.

Court of Appeal of Louisiana. Second Circuit.

Nov. 3, 1933.

█

Jackson & Smith and Charles L. Mayer, all of Shreveport, for appellant.

T. Overton Brooks, of Shreveport, for appellee.

DREW, Judge.

Plaintiff sued under the Workmen's Compensation Act (Act No. 20 of 1914, as amended) for total permanent disability resulting from an accident on December 6, 1931, while in the employ of K. C. Wilson. He joined as defendant his employer's insurers, Eagle Indemnity Company.

Defendant admits the employment, the accident alleged, and slight injury to plaintiff; the sole defense being that plaintiff has recovered from the injuries received and has been paid all compensation due him.

The lower court rendered judgment for plaintiff allowing him $9.10 per week for a period of 65 weeks, for 50 per cent. disability of the right foot. Defendants have appealed, and plaintiff has answered the appeal, praying that the judgment be increased to not more than 400 weeks for permanent total disability.

Plaintiff and three other workmen were digging a pit in connection with certain construction work being done by K. C. Wilson at Barksdale field. The pit, at the time of the accident, was about 8 feet deep and 10 feet wide. The workmen were in the bottom of the pit, throwing the dirt out, and one workman was on the top, shoveling the dirt away. It was raining slowly at the time, and the ground was watersoaked. Without any warning, the west side of the pit caved, and a great quantity of dirt fell into the pit. Two of the workmen ran to the far side of the pit and escaped injury, but the other two, one of whom was plaintiff, were caught by the falling dirt and knocked down. Willie Perry was completely covered by the dirt, and plaintiff

---

*Rehearing granted December 1, 1933.

was covered from his feet to about his chest. Plaintiff was on the bottom, and Willie Perry fell across him. The quantity of dirt that fell on them is not made definite, but the best testimony is that the dirt covering these men was from 2½ to 3 feet through.

It required some little time to dig the men out, and they were then carried to a sanitarium, where Willie Perry died within a few days, and plaintiff was treated for about ten days and sent to his home. While at the sanitarium, plaintiff was treated by Dr. George Quinn, and from then on was treated by Drs. Quinn and Walke at their office. Dr. Quinn states that plaintiff complained only of his ankle while at the sanitarium, and was treated for a sprained ankle. The last time he treated him was about a month after the accident. Most of the treatment given plaintiff after he left the sanitarium was by Dr. Quinn's associate, Dr. Walke; that he has not examined plaintiff since.

Dr. Walke states that he treated plaintiff twenty-one times for a sprained ankle, and that he made no other complaint to him; that he discharged him as well on January 21, 1932, and, in his opinion, he was able to go back to work on that date. He has not seen him since. Acting on Dr. Walke's advice, defendants paid plaintiff compensation at the rate of $9.75 per week for 7 weeks, and have refused to pay him any more.

This suit was filed July 7, 1932, and tried on October 28, 1932. There can be no dispute over the fact that at the date of trial plaintiff's ankle was still swollen and giving him trouble. Plaintiff's claim for total disability is not based solely on the ankle injury, which, under the law, is not sufficient to claim total disability, but is based principally upon an injury to the back.

The lower court found as a fact that the accident did not cause the injury to the back. The judge who passed upon the case did not hear it tried and did not have the benefit of seeing and hearing the witnesses, and therefore was in no better position to pass upon the facts than we are.

It was clearly shown by a radiologist and one other physician and surgeon that at the time of trial plaintiff was suffering with a severe trouble in the back which rendered him permanently and totally disabled from performing ordinary manual labor. Both Dr. Durham and Dr. Edwards are positive that plaintiff at that time was totally and permanently disabled. They are corroborated by Dr. Paul, and are the only doctors who examined plaintiff a short while before the trial. Dr. Durham, who was corroborated by Dr. Edwards, testified as follows:

"Q. Dr. Durham, have you had occasion to examine the plaintiff in this case, Russell Barrett? A. Yes, sir.

"Q. When did you make your examination of this plaintiff? A. Yesterday.

"Q. What was the extent of your examination. What part of the body did your examination cover? A. I examined him with particular reference to whether he had an injury to his back and disability at the time.

"Q. What particular part of the back? A. Particularly the lower end of the back.

"Q. Did you have occasion to refer to any X-ray pictures that were made? A. Yes, sir, I saw X-ray pictures.

"Q. Are you able to read X-ray pictures? A. Yes, sir.

"Q. Do you find anything wrong with this man's back? A. Yes.

"Q. What part of the back do you find something wrong with? A. I found the trouble to be in the lumbar spine, lower third, particularly the lower part adjacent to the pelvis.

"Q. What nature of trouble did you find? A. On the examination made it showed a definite loss of the normal curve of those bones of the spine, joining the third, and fourth lumbar vertebræ, with very definite range of motion or range.

"Q. Did you find any arthritic condition? A. Yes. The X-ray picture shows indistinctness of the articulation of the right side of the spine from the second to the fifth lumbar inclusive, and on both sides between the fourth and fifth, and between the fifth and first sacral.

"Q. Is there any fusion between the vertebræ? A. There is a cloudiness of the lines of the vertebræ and may be a suggestion of probable fusion, and this is borne out by the findings on examination of the lack of motion in this region.

"Q. Doctor, in your examination, did he give any evidence of pain? A. He does give evidence of pain. On both anterior and posterior of the bone and to the side there is marked tenderness over the last two mentioned vertebræ, fourth and fifth on both sides.

"Q. Doctor, did you notice any bony spurs? A. In addition to that there is also an incline of both sacro-iliac articulation.

"Q. Doctor, you have testified as to your findings, what would such condition have upon a person as to pain? A. Such condition would produce pain.

"Q. Constant pain? A. I presume more or less constant, in any effort to stoop over or lift, and any jarring of the back such as might take place in walking on uneven ground.

"Q. Would such a condition affect his motion, the flexing of the back in bending over and standing up? A. Yes, would limit the motion.

"Q. What sort of limitation did you find, was it small or marked? A. I would say that the limitation was quite marked. The man was unable to stoop over toward the ground that is enough to put his hands, only to the extent of a little· below the knees, and the motion in that was caused by the back muscles the stiffness in the upper part of the spine.

"By Court: Q. What would you say as to the ability of this man to do manual labor? A. I would say that he was totally disabled for general manual labor.

"Q. What would you say as to the permanency of the injuries? A. I think that his injury is permanent."

It therefore follows that the question for us to, determine is, Was the injury to the back, shown at the time of trial, the result of the accident?

So far as the record discloses, plaintiff was a strong healthy man prior to the accident and was capable of performing hard, manual labor, in which he was engaged at the time of the accident. Since that time, he has only worked about 2 weeks as a janitor at the Kress store in Shreveport, some time during the summer of 1932. Arthritis, with which he is suffering, is a disease that progresses, and had at the time of trial progressed to the stage that rendered him disabled. It is not shown by defendant that the arthritis was of long standing, nor is there anything in the testimony to show that he suffered with it prior to the accident, and, while the medical testimony is that in the great majority of cases arthritis is caused from focal infection, all the doctors admit it can be and is often caused from trauma. There was no attempt to show bad teeth or tonsils in plaintiff, or that there was any infection anywhere that might have caused arthritis. All the doctors admit that such an accident as plaintiff had could have caused his condition.

The blow plaintiff received when the dirt fell upon him was sufficient to knock him down, either by the dirt striking him or knocking his companion, Willie Perry, against him. The weight of the dirt must have been great and was against his back, as it is shown that he was lying with his face down. As soon as he was dug out, he complained of hurting all over, and especially complained of his back and ankle hurting him. It may be true that he did not inform the doctors of the pain in his back, but his wife began applying poultices, made of clay and vinegar, to· his back soon after he left the sanitarium and kept this up until the time of trial. The fact that he worked two weeks as a janitor in a store some 4 or 5 months prior to the date of trial is not sufficient to justify us in finding that he was not totally disabled at

the time of trial and that his disability was caused by the accident, especially when his disability is caused by a progressive disease for which there is no known cure. Without any testimony to show any other possible cause for his condition, the only reasonable conclusion for us to reach is that his condition was caused by the accident. We therefore find that plaintiff is totally disabled and that his disability was caused by the accident on December 6, 1931.

It therefore follows that the judgment of the lower court is amended by increasing the period of weekly award from 65 weeks to a period not to exceed 400 weeks, and, as amended, the judgment is affirmed, with costs.