## BARRETT v. WILSON et al.
## No. 4610.

Court of Appeal of Louisiana. Second Circuit.

March 2, 1934.

For former opinion, see 150 So. 458.

Jackson & Smith and Chas. L. Mayer, all of Shreveport, for appellant.

T. Overton Brooks, of Shreveport, for appellee.

TALIAFERRO, Judge.

We rendered judgment in this case in November, 1933 (150 So. 458), and upon application of defendants a rehearing was granted. The case has been argued again and is now before us for further consideration. It was pointed out in the application for rehearing that certain statements in our original opinion were susceptible of an interpretation that would lead to the inference that a plaintiff in a compensation suit, to recover, was not required to establish his case by the same preponderance of testimony as is required in other civil cases; and it was to clear up this lack of certainty in the opinion, as well as to give the case additional study and consideration on its merits, that the rehearing was granted. A satisfactory resolution of the facts is not without difficulty. The facts of the case and a large part of the medical testimony are reviewed and commented on in the first opinion. These will not be reiterated at length in this opinion.

It cannot be disputed that plaintiff on December 6, 1931, experienced a severe shock and some serious injury from the sudden caving in, and falling against and upon him, of a large quantity of dirt from the wall of a pit, 8 feet deep and 10 feet wide, which he and others were digging at Barksdale Field in Bossier parish. The dirt struck him and one of his co-workers violently, knocking both down, the latter being entirely covered by the dirt as he fell upon the body of plaintiff. Plaintiff himself was covered to his waist.

It cannot be successfully denied that plaintiff, at date of trial of the case, October 28, 1932, was suffering from arthritis of the lower lumbar spine and in the region of the sacro-iliac joints. There is difference in the opinions of the doctors as to whether this disease produced total disability or not. The controverted question, therefore, is: "Does the evidence establish that this arthritic condition is a result of the original injury, or that there is causal connection between the two? Arthritis is a progressive disease. Most cases of such arise from focal infection, but it may be caused by trauma and metabolic changes. While an X-ray picture will reveal true arthritis, yet it cannot be determined therefrom whether the arthritis is traumatic in origin, infectious, or metabolic. It is not denied that the blow to plaintiff's body from the falling dirt was sufficient in force to have produced traumatic arthritis.

Plaintiff was promptly removed from the pit and carried to a sanitarium in the city of Shreveport where he was given treatment and left in charge of competent physicians for such medical attention as his case required. He then only complained of injury to his right ankle and leg below the knee. The ankle was X-rayed and found to be strained. There was no fracture as first suspected. He remained in the sanitarium for ten days, being treated by Dr. Quinn, and regularly thereafter, until January 21st, was treated by Dr. Walke.

He was discharged on this date by Dr. Walke as being able to resume work. All of the treatments administered by Dr. Walke, twenty-one in number, were to the ankle. Plaintiff, during this period, never complained of any pain in or injury to his back. He reported back to his employer at Barksdale Field some two or three weeks after the accident in the pit and asked for work, but none was given him because the crew with whom he had worked was "shut down." In the last of July or first part of August, he was employed by S. H. Kress & Co., in Shreveport, as porter. His duties there required him to do heavy lifting and handling of goods in original and broken packages. While there he appeared to be in good physical condition, and never complained to his associate, with whom he worked daily, or to any one else there, of any back ailment. His services were discontinued, not because he was physically unable to perform his duties, but because a younger and neater appearing man was wanted for the position. Mr. Achee, agent of defendant's insurer, saw plaintiff often while compensation was being paid him, but plaintiff never made any mention of pain in his back during the time. Achee says he knew nothing of such complaint until this suit was filed on July 7, 1933, which was before plaintiff worked at Kress'.

Plaintiff's wife says that he complained of his back frequently after the accident, but not before that time, and that, beginning about three weeks after he left the sanitarium, she regularly applied poultices of clay and vinegar to the locus of his complaint, and repeated these applications until two or three weeks before the case was tried. Here, we will state, plaintiff was being regularly treated, free of charge, by Dr. Walke during the first part of the time plaintiff's wife says she was also doing so. Willie Jones and James Mitchell, laborers of K. C. Wilson, defendant, testified that when plaintiff was removed from the pit, he complained of his back hurting him and repeated such complaints to them after he was able to walk with the aid of a cane. William Collins, another laborer for defendant, says that when plaintiff was taken out of the pit he complained of "hurting all over, pretty near"; but thereafter, when he met plaintiff on the streets, walking with a cane, he only complained of his leg. W. W. Hattic, who was also working for defendant when plaintiff was injured, testified that he was three blocks away from the pit when it caved in, and immediately hurried to the scene. He carried plaintiff to the sanitarium.

Plaintiff then only complained of his leg paining him.

Dr. Harold F. Edwards, who specializes in X-ray work, made a picture of plaintiff's lower limbs and of the sacroiliac region on October 27th, the day before the case was tried. He found evidence of traumatic arthritis of the articular facets of the second, third, fourth, and fifth lumbar vertebræ, being more marked going down, and arthritic changes in the sacroiliac joints. These conditions found by him could have two effects, viz.: Pressure on the nerves, causing pain and spasms of the muscles of the back; and, second, stiffening of the back. The changes in the sacroiliac joints would be painful and cause limitation of motion. He found no fractures of the vertebræ. The evidence of arthritis disclosed by the X-ray picture consisted of extra deposit between the bones, which he described as true arthritis. He admitted, however, that from the picture it could not be determined whether this arthritis is traumatic in origin, or otherwise, and further adds that arthritic changes are common symptoms in persons 35 years of age and over. He described the condition as traumatic arthritis because he had been informed that plaintiff had previously had an accident. He was asked this question: "Q. Doctor, if it is shown that this man received or sustained an injury to his body, back and legs, would you say that the results that you saw could have been caused by that injury?" To which he answered: "A. I would say, yes."

Dr. H. A. Durham, a specialist on bone surgery, examined plaintiff the day before the case was tried, and read the X-ray pictures made by Dr. Edwards. He found conditions in the lumbar vertebræ and sacral regions about the same as Dr. Edwards did, which conditions gave evidence of pain. He thought plaintiff totally incapacitated to perform manual labor, and that the disability was permanent. He was asked the following questions and gave answers thereto, to wit:

"Q. In this particular case would you say that this man's total disability was due to the arthritis or due to the injury? A. I think that the disability existing now is due to the arthritis, which I think was precipitated by the injury. * * *

"Q. Doctor, what do you mean when you say that the injury precipitated the arthritis? A. I mean by that, that the trauma to the spine probably actually tore the ligaments, which made that area more susceptible to arthritis than normally that area would have been."

Dr. H. W. Paul, regular physician of plaintiff and family, examined him first in the early part of August, 1932. He then complained of pain in his back. Dr. Paul found definite tenderness over both sacroiliacs and the lower lumbar vertebræ, indicative of pain from pressure. He again examined plaintiff the day before trial of the case and found his condition to be practically the same as it was at the time of the prior examination. He thought that the conditions found by him could have been caused by heavy straining, or from a heavy lick or injury to the back. He was of the opinion that the pain was due to straining of the ligaments around the sacroiliac joints, and not to arthritis. He did not examine or testify from the X-rays.

Neither of these three physicians, all of whom testified as witnesses for plaintiff, was asked, nor voluntarily stated, how long it would usually be, after a trauma to the back, before arthritis, accompanied by pain, would manifest itself.

Dr. G. A. Caldwell, orthopedic surgeon, a witness for defendants, examined plaintiff on July 30, 1932, at which time he was complaining of his knee, ankle, and back. He did not think plaintiff co-operated in the examination. He found no "gross evidence of arthritis." The X-ray pictures made by Dr. Edwards were examined by him, and therefrom he found true arthritis of the lumbar vertebræ and sacral region, but no evidence of fracture was discovered and no displacement of any of the parts was disclosed. He gave the following testimony:

"Q. Now the things that you have spoken of as having found, just tell us, if that is evidence to you of an injury? A. No, sir.

"Q. There is one of the plates that shows a little spur sticking out at one point, did you notice that? A. Yes, sir.

"Q. What is that? A. That is just a spur projection joined on to the margin of the bone or vertebræ, where the ligaments attach. See them frequently in people, particularly the laboring class, up or past the age of forty, and has no particular significance with reference to an injury.

"Q. After having, from your own examination of this man, this plaintiff, and from the pictures exhibited there, I will ask you to state whether or not, in your opinion he is disabled from work? A. I do not believe that he is disabled from working. I think that he can work.

"Q. It has been testified here that he worked for two weeks over at Kress, helping to move heavy packing crates, if he had had anything wrong with his back, with this evidence as shown by the X-ray, could he have done that work? A. No, sir, not if as extensive as those changes are.

"Q. Doctor, what causes arthritis, ordinarily? A. The term arthritis is so general, I wish you would limit it to certain types.

"Q. As I understand from this evidence, you found some change in the spine of the plaintiff. Are they arthritis? A. Yes, true arthritis, as shown by the X-ray, by the changes in the bone surface, principally by the narrowing of the bone space due to absorption of the cartilage from the ends of the bone and shown by a roughness of the bone at that point.

"Q. Now those changes, or do those changes take place as a result of injury or otherwise? A. Those changes are usually the result of disease.

"Q. What kind of disease? A. Infectious diseases.

"Q. Are they ever due to injury? A. It is possible to have similar changes due to injuries.

"Q. Doctor how long would it take a patient to become disabled if due to injury? A. In case it is due to any injury the patient has immediate disability."

He further stated that the conditions afflicting plaintiff were not abnormal for a laboring man of his age, and further that where considerable time intervenes between date of injury and manifestation of symptoms of arthritis, he would not connect the injury and the disease. He would ascribe the disease to causes other than traumatic.

The specific injuries of which plaintiff complains, resulting from the accident to him, are as follows: "* * * That the bones, nerves, tissues, muscles, joints, ligaments and structures in and through petitioner's right ankle, right knee, and right side, back, spine, spinal cord, spinal column, have been permanently injured, disjointed, impaired and affected in such a way as to effect a complete derangement and disorder through said right leg, knee and ankle, back, spinal cord and spinal column, and that he will never have the complete use of his back or of his said right ankle, knee and right side."

The testimony in the case does not, in the main, support these allegations. His right ankle was severely strained, but not fractured. It was not entirely well when the case was tried. Had the injuries to plaintiff's body been of the character, and to the

extent, alleged by him, or even nearly so, unmistakable symptoms thereof, such as intense pain and swelling of and about the injured parts, would have manifested themselves immediately after the accident, and total disability to labor would have followed. It would have been a most unnatural attitude on his part to have withheld from his physicians the fact that he was suffering from such injuries. In this connection, it is well to note that this suit was filed two or three weeks before he was given employment at Kress', and, as stated before, he performed duties there that required lifting and handling of heavy cases of goods. In his petition it is alleged that because of the injuries complained of, he is permanently and totally incapacitated to do work of any reasonable kind or character.

██ Plaintiff made no effort to disprove, as far as possible, that the arthritis affecting him was not due to local infection. None of the physicians who examined him was interrogated about the most common sources of infection to the body, viz., the tonsils, the teeth, and syphilis. In a case of this character, where much time has intervened between the date of accident and the discovery of arthritic conditions, it devolves upon the plaintiff to negative, as far as can possibly be done, every possible theory of the cause of his disability, excepting the one he relies on to recover. Defendants were not called upon to prove the existence of such sources of infection, because the burden of proof rested upon plaintiff throughout the case to establish his allegations by a preponderance of evidence in the same manner and to the same extent as is required in other civil cases. Defendants have the right to rely upon the weakness of plaintiff's case and the failure of the tendered proof, to establish causal connection between the accident and the conditions of which plaintiff now suffers.

██ If plaintiff's back and joints were injured, as he alleges, or were injured even nearly as badly as he alleges, from the dirt falling upon him, we cannot conceive of his physical condition being such that he could again resume hard manual labor, within two or three weeks, as he sought to do when he returned to Barksdale Field for employment; and we, likewise, cannot conceive how he could perform the heavy work at Kress' for two weeks, without complaint to his employer, if the arthritic affliction had its inception from trauma the previous December. In view of these facts, and that plaintiff never complained of pain in his back to Drs. Walke and

Quinn while they were treating him over a period of six weeks, coupled with other facts and circumstances in the case, particularly that the possibility of the arthritis being due to common sources of local infection was not negatived by proof, we are forced to the conclusion that it is more than probable that plaintiff's condition is due to infection or metabolic changes. Anyway, he has failed to establish by convincing proof that there is causal connection between the accident to him and the arthritic condition he now has.

The testimony discloses that at the time of trial plaintiff's ankle was not entirely well. There is no manifest error in the judgment of the lower court, and it is now affirmed.

MILLS, J., recused.