## TAYLOR v. SOUTHERN CARBON CO.*
### No. 4732.

Court of Appeal of Louisiana. Second Circuit.
March 29, 1934.

J. Norman Coon, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff was accidentally injured on February 1, 1933, while in the employment of defendant. He brings suit to recover compensation as in case of permanent total disability for 65 per cent. of his weekly wage for 400 weeks. He was injured while assisting a fellow workman replace a broken wheel in one of defendant's "hothouses." He was pulling down on an iron bar used as a lever to elevate a channel so that the wheel could be placed thereunder, when it suddenly slipped, causing his body to lunge forward about halfway to the ground. He alleges that his back was injured as a result of this sudden shift of movement by his body, and that immediately after the accident he felt something give way or tear loose in his back, followed by severe pain therein, especially on the right side, and swelling over the area of the pain; that he remained at his work the balance of the day in the hope that the pain would subside and his condition improve; that on the following day, the pain and suffering having increased, he reported his condition to defendant and was instructed to report to its physician in the city of Monroe, La., Dr. George W. Wright, which he did. The specific injuries he claims to have received as a consequence of said accident, because of which he alleges permanent total disability entitling him to the compensation sued for, are: That his back was weakened; that he is unable to stoop over, bend forward, or raise his right arm above his head; that numerous muscles, ligaments, tendons, nerves, and other body tissues were severed, torn, ruptured, and bruised, and that, although this condition is generally in his back, it is more severe in the upper one-third of the latissimus dorsi muscle; that as a result thereof he suffers intense pain continuously in that part of his body. He avers that the disability resulting from these injuries will continue the balance of his life, preventing him from performing manual labor or any other sort of work for profit or gain.

Defendant admits that plaintiff was in its employ on February 1, 1933, and that on that date he complained of a slight accident, but denies that said accident occurred in the manner and was of the serious nature alleged by plaintiff. It is averred that plaintiff's weekly wage for the year prior to his injury

*Rehearing denied May 4, 1934.

averaged $10.86, and that if he is entitled to any compensation at all same should be based on this recompense. In all other respects the material allegations of fact of plaintiff's cause of action are denied.

Before the taking of testimony was begun on the day of trial, defendant, under full reservations, offered to pay plaintiff compensation based on a wage of $10.86 per week from February 1, 1933, until date of filing of suit (May 2, 1933), with interest and cost of suit to time of said offer. No legal tender was made for the reason that plaintiff stated that same, if made, would be refused.

From a judgment for plaintiff for compensation at the rate of $7.06 per week from February 2, 1933, to July 9, 1933, he prosecutes this appeal. Defendant answered the appeal, and prays us to restrict the judgment in plaintiff's favor, if any is given him, to the amount tendered before the trial began.

When Dr. Wright examined plaintiff the day after he was hurt, he found contusions of the back, particularly of the lower portion, on right side. No part of the skin was broken. Definite evidence of contusion was manifested by swelling and discoloration of the skin, impaired and painful function; the swelling being more pronounced in the small of the back, right side, lateral to the spine. Plaintiff complained of presence of pain over the entire contused area, especially lower portion. Dr. Wright ministered unto plaintiff for twenty-seven consecutive days, and thereafter every alternate day. The treatment consisted of fixation and immobilization of the lower back, and counter irritation, or heat applications. He did not find that the latissimus dorsi had been partially torn loose or stripped at a point below the scapula, as contended by plaintiff and testified to by the physicians sworn in his behalf. On April 1st he told plaintiff that his condition had improved so rapidly that with the aid of the use of a properly fitted belt around the small of the back he could return to work, and that he should wear the belt for about six months. He did not procure the belt for him because plaintiff said he did not think he was able to work, and for the additional reason that when he next returned for treatment he only complained of pain being next to the shoulder blade where a belt could not be effectively used.

No physician, besides Dr. Wright, examined or treated plaintiff until May 18th. On this date he was physically examined by Drs. Pierce and Bendel of the city of Monroe.

Drs. Coon and Gray, at request of his counsel, examined him on June 7th and again on June 14th, day previous to trial. Plaintiff's physicians are of the opinion that the latissimus dorsi muscle was stripped or torn loose from its fastening under the shoulder blade, and that he was unable to do heavy manual labor when the case was tried, while the other physicians, testifying for defendant, are of a different opinion, and are satisfied that before the case was tried plaintiff's condition was such that he could resume the work he was engaged in before being injured, requiring the handling of sacks of carbon black weighing not over twelve pounds. They were unable to discover any objective symptoms to justify the pain and inability professed by plaintiff. Dr. Gray assigned as objective symptoms of the stripping of the muscle a small area near the right shoulder blade, slightly higher than the corresponding area on left side, and a dimple in the skin near thereto. Defendant's doctors explain that the raised area was simply the evidence of the muscle being better developed on the right side, as is generally the case, than on the left side, and that the dimple was simply a contour of the surface likely to be found in any one. Dr. Gray also supports his opinion by his finding that when plaintiff executed certain movements of the shoulder and arm there was absence of contraction of this muscle, indicating the presence of some abnormality. In this conclusion he is also contradicted by defendant's physicians.

Dr. Gray referred plaintiff to a roentgenologist for an X-ray picture and study. The report of this specialist discloses that all the ribs, both scapulæ and other bones of the thoracic group, were in normal relationship and alignment, with no evidence of fracture, dislocation, or injury, and no indication of pathological changes of any kind. Therefore, any thought that plaintiff's trouble was possibly traceable to bone injury had to be dismissed.

Plaintiff, when interrogated thereon, stoutly denied that he had done, or was able to do, any heavy work. It is shown that before this suit was filed he frequently walked from his home to the city of Monroe, a distance of nine miles; that he often hoed in his garden, and on one occasion assisted another man in the removal of gas meter orifices for three hours, requiring the use of both hands and arms, considerable physical effort, and straining; that on one occasion he "hung" on the running board of an automobile for a considerable distance and jump-

ed off of it while in motion; and that on another occasion he went several miles from home and fished from a small boat all day, sleeping on some boards for a bed the night following. These physical exertions required him to execute nearly every motion the body could be subjected to and are strongly·persuasive of defendant's contention that whatever may have been the extent of his injuries originally, time and treatment had fairly well restored the status quo ante.

Dr. Wright testified that at time of trial plaintiff was still coming to him for and was receiving heat treatments from his clinic. He explained that this was done largely to gratify plaintiff's wishes, and not because he really thought any disability existed. A rehearing was granted in the case and second trial was had on July 12th, some 27 days after first trial. Plaintiff admitted that he had not been back to Dr. Wright for any treatments since first trial.

While the case was pending on rehearing, the judge of the lower court, evidently in view of the contradictory testimony of the physicians who had given evidence on the first trial, appointed Dr. A. G. McHenry as expert to make an examination of plaintiff to ascertain the nature and extent of his disability, if any, and make report of his findings to the court. The court's instructions were carried out by Dr. McHenry. He found no bone pathology, and that all of plaintiff's muscles were functioning perfectly at time of the examination. In his opinion six months' disability would cover such injury as plaintiff suffered. The court was evidently influenced by Dr. McHenry's report in fixing the amount of compensation due plaintiff.

■■■ The physicians who testified in the case are all reputable and prominent in their profession and of equal credibility. The two lines honestly differ in their opinions of the extent and exact nature of the injuries plaintiff received in the accident, and as to the extent of his disability, if any, when the case was tried. In point of numbers, defendant has three doctors to plaintiff's two, not counting Dr. McHenry. If the scales are evenly balanced by the medical testimony, we think plaintiff's own actions and conduct, at times void of suspicion, turn them against him, especially against the·contention that he is unable to perform work of any reasonable character. It seems to us quite obvious that if a strong man has recovered from muscle injuries to the extent that he can regularly walk many miles, use a hoe for lengthy periods, ride on the running board of a moving automobile and jump therefrom while in motion, and perform the other work and outdoor activities enumerated herein, he is certainly physically able to handle sacks of carbon black weighing not more than twelve pounds each.

Whatever else may be said of the case, it is certain plaintiff has not sustained the burden of proving his allegations to that degree of certainty required by law. Though suing for workmen's compensation, he is held to this proof as in other cases. Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666; Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734; Terry v. Sparco Oil Corpn. (La. App.) 150 So. 391; Russell Barrett v. K. C. Wilson et al. (La. App.) 152 So. 795.

■■■ We think defendant was tendered all compensation due him, and hold that when he filed suit he had recovered sufficiently from his injuries to perform the labor he was performing when injured.

For the reasons herein assigned, the judgment of the lower court is amended by decreeing the period over which plaintiff is entitled to compensation to be from February 2, 1933, to May 2, 1933, and relieving defendant from payment of any cost accruing after tender made by it; and in all other respects the judgment appealed from is affirmed.

■■■ As plaintiff was authorized to litigate in forma pauperis, he cannot be condemned to pay any part of the cost.

The right of plaintiff's counsel to the statutory fee of 20 per cent. of the amount collected under this judgment is hereby recognized.·