## GARDNER v. SOUTHERN KRAFT CORPORATION.

### No. 5697.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Joseph S. Guerriero and John F. McCormick, both of Monroe, for appellant.

Madison, Madison & Files, of Bastrop, for appellee.

HAMITER, Judge.

Compensation as for total and permanent disability is asked by plaintiff in this suit which he instituted under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, as amended.

It is plaintiff's contention that he suffered an accident on August 31, 1935, while cleaning out a lime burner of defendant corporation, in that he inhaled a large quantity of lime dust; and that such inhalation aggravated and caused to flare up the partially active tuberculosis which he had previously contracted as an employee of defendant and then possessed, and resulted in his total and permanent disability.

Defendant admits that plaintiff was in its employ on the mentioned date, but denies liability and particularly denies that he experienced any accident with resultant injury as alleged.

The trial court rejected plaintiff's demands. In the written reasons for judgment, which we find in the record, it is stated:

"The evidence not only fails to show that an accident occurred as alleged, but the evidence shows that this defendant was suffering from tuberculosis prior to the date of the alleged accident and that the tuberculosis was in an advanced state. The testimony of the doctors is to the effect that tuberculosis can not develop in a period of a few days and there is nothing before the court to show that the tuberculosis in this case is the result of any accident and there is nothing in the case to show that the tuberculosis condition was rendered worse by any accident or injury suffered on the premises of the defendant."

This appeal was prosecuted by plaintiff. The questions presented by the appeal are:

1. Was there an accident?

2. If so, was it responsible for plaintiff's asserted disability?

It is provided in section 2 of Act No. 20 of 1914, as amended and re-enacted by Act No. 85 of 1926 § 1, that:

"* * * if an employee employed as hereinabove set forth in Section 1 (except an employee who shall be eliminated from the benefit of this act for the reasons hereinafter set forth in Section 28 of this Act and elsewhere) receives personal injury by

accident arising out of and in the course of such employment his employer shall pay compensation in the amounts and on the conditions and to the person or persons hereinafter provided."

Section 38 of Act No. 38 of 1918, which amends and re-enacts sections 38 and 39 of Act No. 20 of 1914, states:

"That the word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

According to plaintiff's testimony, the alleged accident occurred early on the morning of August 31, 1935. He states that he worked in the lime burner from midnight until five o'clock A. M., and that at the latter named hour he inhaled a large quantity of lime dust and "a chunk of lime fell across my back, and I got out and I told Jim Conway that I had got hurt and told him some lime had fell on me and burned me". He further states that he informed the foreman, a Mr. Keller, about 7:10 o'clock that, "I had got burned", and at nine o'clock he went to the doctor's office.

Jim Conway, who was on duty and worked with plaintiff at the time, says that he did not see any accident and denies that claimant told him of having had one and of being burned.

No accident was reported to the foreman, according to the testimony of the latter, whose duty it was to receive reports of that kind; however, on the date in question plaintiff told him, "I am sick and I am going to see the doctor". A statement that he was sick had been made by plaintiff several days previously.

In view of the conflicting testimony above discussed, it appears that the evidence does not preponderate in favor of the fact that an accident occurred as alleged. This conclusion is in keeping with the trial court's finding.

But if it be assumed that plaintiff experienced an accident as he claims and testifies, he has not discharged the burden imposed on him of proving that it was responsible for or had a causal connection with his asserted disability.

It is testified by Dr. Newman, a witness for plaintiff, that claimant came to him on August 6, 1935, or twenty-one days before the date of the claimed accident, at which time he was presumably suffering from acute exhaustion and fatigue, and was "considerably prostrated and breathing heavily, bringing up a certain amount of rather heavy sputum, and unable to give me a coherent history of his condition at that time." No intensive examination was then made by the physician, for he had been informed that a case of prostration from heat or work was at hand, and he was concerned with giving immediate first aid measures; and consequently a diagnosis of tuberculosis was not made. He further states that he next examined plaintiff on August 31, 1935, and by means of a physical examination, X-ray plates and sputum tests it was found that the patient was suffering from an advanced stage of pulmonary tuberculosis, a very progressive disease. When asked as to claimant's condition when he came into the office on the latter date, the physician replied: "Seemingly had recovered from the immediate poor state that he was in on the previous visit. I was able, by questioning, to discover for some time he had been suffering respiratory distress, progressive weakness and loss of weight." His condition on the last visit was not as severe as on the former one. It was Dr. Newman's opinion that plaintiff's repeated exposure to the lime dust and heat over a period of time caused a gradual breaking down of his resistance with the resulting disability that was found, and that he had tuberculosis prior to August 6, 1935. Although he believed that plaintiff's exposure to excessive heat and great quantities of lime dust on the morning of August 31, 1935, was sufficient to cause a flare-up of the pre-existing condition of tuberculosis, he thought that the claimed accident could not produce advanced pulmonary tuberculosis in one day; that a period of from two to two and one-half months would be required for pulmonary tuberculosis in an advanced stage to become apparent, starting from a reasonably severe focus in the lungs of a poorly nourished individual working under adverse circumstances.

On September 9, 1935, the said Dr. Newman, while attending plaintiff, executed for him an insurance claim form in which the following question was propounded: "Is the claimant's condition due to his occupation?" The answer of the physician was, "No".

Another witness for plaintiff was Dr. Tisdale, who made an examination of him on February 23, 1937. He thought that the inhaling of excessive amounts of time dust by a person having an active mild case of tuberculosis would have a tendency to aggravate his condition, but that one exposure to the lime would not bring about immediately an advanced case of pulmonary tuberculosis. He could not testify that plaintiff's condition was contracted at his employer's establishment.

Defendant's medical expert, Dr. Garnier, examined plaintiff on the date of the alleged accident and found him suffering with chronic pulmonary tuberculosis. No burns were observed on plaintiff and he complained of no accident having occurred to cause his disability. This physician was asked if plaintiff's working in connection with the lime caused the condition which was found. The answer was, "It had nothing to do with it. We see the same condition existing in store clerks, field hands, anybody and everybody. Any and all types of people have it."

■ In compensation cases, as well as in other civil suits, it is encumbent on a plaintiff to prove his case with some degree of legal certainty. Barrett v. Wilson, La.App. 152 So. 795. This duty has not been met in the instant controversy. The evidence, which we have hereinabove attempted to analyze, does not weigh sufficiently in plaintiff's favor to justify a conclusion that the disability was caused by the asserted accident.

The judgment appealed from is affirmed.