This is a claim for compensation in which plaintiff sought judgment for $20 per week for a period of 400 weeks, beginning August 10, 1940, on the ground of total, permanent disability, and, in the alternative, for damages in the sum of $83,840, against Travelers Insurance Company and plaintiff's employer, Howard Crumley. An exception of no cause and no right of action by the defendants, interposed to the alternative demand, was sustained, and the alternative demand dismissed.
The facts show that the plaintiff, John M. Gardner, was employed by Howard Crumley, a dealer in automobiles, in the parts department, having been so employed for a number of years; that on or about the 10th day of August, 1940, plaintiff was forced to cease work; that since said date he has been totally and permanently disabled.
In connection with the bare facts of employment and disability, plaintiff alleged that his disability was due to inhaling fumes from the exhausts of automobiles being tested and repaired in immediate proximity to the parts room of the establishment in which plaintiff performed his duties; that it was the inhalation of carbon monoxide and other fumes and gases from the automobile exhausts that brought about plaintiff's collapse on or about the date of August 10, 1940.
On trial plaintiff also attempted to show that the collapse which occurred on August 10th was the climax of a long period of ill-health, weakness and progressive deterioration in plaintiff's physical condition which had first become serious, and for which plaintiff had first sought medical advice and assistance, on or about the 1st day of April, 1940.
It is the contention of plaintiff that the nature of the enclosed space in which plaintiff was employed, lack of proper ventilation, and the almost continual operation of automobile motors in an adjoining space, were the causes of plaintiff's condition, and that the constant inhalation of noxious fumes and gases which plaintiff could not escape in the performance of his duties, by virtue of the enclosed space in which he worked, brought about a progressive deterioration which resulted in his permanent and total disability.
The burden of the defense in this case is based upon a denial that plaintiff's disabled condition resulted from the inhalation of carbon monoxide.
The record is made up largely of very involved and highly scientific testimony given by two of plaintiff's attending physicians, and one expert produced on behalf of the defendant.
The Court is in accord with the statements made in briefs of counsel for both plaintiff and defendants to the effect that the sole issue, or certainly the principal issue which must be determined, is whether the condition of plaintiff can be attributed to the inhalation of carbon monoxide fumes to such extent or degree that this particular fact was the cause of his disability.
Since the determination of this question must inevitably decide the issue in this case, we shall address our attention to its consideration.
Although plaintiff proceeded upon the basis of the occurrence of an "accident" which took place on August 10, 1940, which accident was asserted to have been his collapse on that date, the record discloses beyond any question that plaintiff suffered for a number of months prior to date of August 10, 1940, from serious physical infirmities, about which he first sought medical aid on or about April 1, 1940. He first consulted Dr. S.W. Boyce about April 1, *Page 832 
1940, when his condition had become so serious as to cause him grave concern. During the latter part of June he consulted Dr. C.E. Boyd. Both Dr. Boyce and Dr. Boyd testified on trial as witnesses for plaintiff.
In addition to the doctors who appeared and testified on behalf of plaintiff, plaintiff also consulted Dr. D.L. Kerlin, and Dr. T.M. Oxford of Shreveport, Dr. Dean Echols and Dr. A.C. Waters of New Orleans. Plaintiff also had a spinal laboratory test made by Dr. W.R. Matthews of Shreveport. We feel it is significant, to a point that merits comment, that none of the last five named members of the medical profession appeared in behalf of plaintiff.
The record further discloses the fact that under date of August 20, 1940, Dr. S.W. Boyce executed an attending physician's statement in connection with a disability claim made to the Travelers Insurance Company in which, in answer to the requirement of the statement:
"Give description of injury or diagnosis of disease causing disability"
Dr. Boyce answered:
"Poliomyelitis, chronic, progressive."
On the same date Dr. Boyd executed a similar statement for the same company and answered the same question:
"Chr. poliomyelitis".
Under date of June 23, 1941, Dr. Boyd executed an attending physician's statement for the Aetna Life Insurance Company on a disability claim and again gave his diagnosis in the same words:
"Chr. poliomyelitis".
On June 27, 1941, Dr. Boyce executed an attending physician's statement for the Aetna Life Insurance Company on a disability claim and gave his diagnosis as "Amyotrophic lateral sclerosis".
An examination and careful consideration of the record conclusively establishes the fact that on April 1, 1940, and possibly for some period prior thereto, plaintiff was suffering from a physical condition which subsequently proved to be serious and permanently disabling. From April 1, 1940, until the time of trial, plaintiff submitted to examinations by a number of physicians and specialists, none of whom, with the exception of his two personal physicians, neither of whom was a specialist, appeared to testify in his behalf.
It is a well settled principle of jurisprudence of this State that the claimant in a compensation case must establish his claim with legal certainty by a clear preponderance of the evidence. While it is the clear intent of the legislature, as easily ascertained from the compensation act itself, that every reasonable latitude be extended plaintiff in the procedure with reference to his case, and while it is the express desire of the Courts of this State to interpret the law with extreme liberality with this idea in mind, nevertheless, a court is not justified in rendering any judgment based simply on a possibility, or even a probability, of the correctness of a claimant's demand. Horton v. Louisiana Veneer Co. et al., La.App., 196 So. 363.
In addition to these facts, it must be remembered that Appellate Courts are slow to disturb findings of fact of District Courts, except where manifest error has been present.
Able counsel for plaintiff in his brief has attempted, by pursuing a line of syllogistic reasoning, to develop an analogy between the case at bar and the findings of fact as stated by the Supreme Court of Michigan in Dove v. Alpena Hide Leather Co.,198 Mich. 132, 164 N.W. 253. In this effort counsel has propounded the following propositions:
That ventilation in the garage where plaintiff was employed was very poor; that carbon monoxide fumes were present in the garage; that carbon monoxide can be taken into the body through inhalation; that plaintiff undoubtedly inhaled carbon monoxide gas; and that plaintiff is suffering from a condition that could be caused by carbon monoxide.
Even if we should concede, arguendo, the truth of the above premises, the conclusion drawn by counsel "therefore plaintiff is entitled to compensation", does not logically follow.
One fallacy in this line of reasoning is apparent in counsel's own expression to the effect that plaintiff's condition could be caused by carbon monoxide. This represents only a possibility which does not exclude other possibilities. We cannot believe that a court would be justified in pronouncing a judgment in favor of a plaintiff simply because plaintiff has established a possibility in his favor.
We do not mean to imply that it was the duty of plaintiff in this case to *Page 833 
prove his contention beyond any question, nor to sustain any onerous burden as to quantity and degree of proof, but we do mean that unquestionably the burden was upon plaintiff to clearly and definitely establish the fact that his disability was the reasonable, consequential result of some injury or disease suffered or engendered in the course of his employment.
We feel that the medical testimony on both sides is at least reconcilable on the point that plaintiff suffers from a neurological condition. Plaintiff's medical witnesses testified that they referred him to specialists in neurology for examination, and one of them testified that plaintiff had always been a nervous type of individual, and always more or less subnormal.
Neurology is that branch of medical science which is particularly concerned with diseases of the nervous system, and therefore comprehends those diseases involving actual structural changes of the nervous system. Although plaintiff consulted and was examined by specialists in neurology, not a single such specialist was introduced as a witness in behalf of plaintiff. This fact might be passed over as being without significance if it was offset to any extent by an absolute certainty of diagnosis expressed in the testimony of general practitioners who appeared on behalf of plaintiff. But on the contrary, we are impressed with the lack of certainty betrayed by the very frank testimony of plaintiff's medical witnesses. One of these witnesses testified that he could not make any definite diagnosis, that he listed some possibilities as to the cause of plaintiff's condition, and that carbon monoxide gas was one of these possibilities. Plaintiff's other medical witness testified that he examined plaintiff in every way, but was not able to make up his mind, and that, while in his opinion plaintiff was suffering from a disease in chronic form analogous to acute poliomyelitis, the cause of this condition was unknown.
Both of plaintiff's doctors unquestionably diagnosed his condition as chronic poliomyelitis, and yet from their testimony on trial of the case the conclusion is obvious that this term of chronic poliomyelitis is both vague and indefinable, and simply represents the nearest approach they could make to an expression of plaintiff's disease in medical terms. Both of these doctors testified that they had concluded that plaintiff's real disability was the result of a degenerative spinal disease affecting the anterior horn cells of the spine.
From the testimony there can be no question that plaintiff suffered from some form of myelitis, an inflammation of the spinal cord, which infection was degenerative and progressive, resulting in a constantly extending atrophy or paralysis.
It would appear that plaintiff's doctors, or at least the two who testified on trial, after a study of possibilities, attributed this condition to one of several causes, and their final selection of carbon monoxide poisoning was undoubtedly induced by the fact that plaintiff in his work was exposed to constant inhalation of carbon monoxide fumes from automobile exhausts. But still, even this opinion remained only a possibility, and as late as June of 1941, at which time both of these doctors executed statements for insurance companies, no mention was made of carbon monoxide poisoning in such reports.
We feel that the statements above referred to, executed by plaintiff's physicians, are particularly persuasive since the answers of the physicians were based upon findings including laboratory examinations. It is further to be noted that no explanation was attempted as to the cause of the condition.
The medical testimony of the defense is a definite contrast to that adduced on behalf of plaintiff. This testimony was given by Dr. T.L. Soniat of New Orleans, a specialist in neurology. Dr. Soniat had examined a report made by Dr. Echols of New Orleans, photostatic copies of insurance reports made by Drs. Boyd and Boyce, and during trial of the case made an examination of the plaintiff. The witness testified that prior to this examination of plaintiff he had not expressed any opinion but that he immediately arrived at a conclusion after such examination, diagnosing plaintiff's condition as neuronitis. This witness definitely and positively denied any relation between neuronitis and carbon monoxide poisoning, and, at considerable pains and in great detail, established his reasons.
Without burdening this opinion with detailed discussion of the testimony of this witness, we are impressed with the distinction which he made between his diagnosis of neuronitis, the other diagnoses of poliomyelitis, and cases of carbon monoxide poisoning. Briefly, it was his contention that neuronitis and forms of myelitis would in *Page 834 
their very nature affect the spinal cord, while carbon monoxide poisoning affected the blood, and as a general rule evidenced itself by first affecting the brain. In addition to this distinction, which was elaborated upon in great detail, Dr. Soniat testified that the laboratory finding of a high protein count, as evidenced in reports of the findings of Dr. Matthews (who was not called as a witness), was characteristic in the disease, neuronitis. On the basis of this finding Dr. Soniat was also able to differentiate between poliomyelitis and amyotrophic lateral sclerosis and progressive muscular spinal atrophy on the one hand and neuronitis on the other. In further substantiation of his diagnosis the witness was able to point to the result of his examination of the oculi fundus and the optic nerve, his conclusion being that the optic nerve had reacted to plaintiff's disease, and since it was a sensory rather than a motor nerve, this finding tended to eliminate the possibility of a motor cell disease of the spinal cord.
To recapitulate the significant points of medical testimony involved in this case, we find that an attempt was made to show on behalf of plaintiff that he suffered from a disease of the spinal system, particularly affecting the spinal cord, which was either infectious or toxic. Since no infection was located, his doctors accepted the possibility of toxemia as the cause of the disease, and since a toxic condition fitted in with the theory of carbon monoxide poisoning, they inclined to a correlation of carbon monoxide with the disease. On the contrary the testimony on the part of the defense attributes plaintiff's condition to a nerve disease of the spinal system and fixes the cause as infection, entirely eliminating the toxic effects of carbon monoxide, since no evidence of carbon monoxide was apparent upon examination.
We are of the opinion that any relation between plaintiff's employment and the disability from which he is suffering remains simply and solely a possibility. Since there was a clear duty and burden upon plaintiff to establish a definite causal relation between his employment and his disability, in the assumption of which duty and burden he has failed, and since this point is finally decisive of the case, we conclude that plaintiff's demands were properly rejected.
For the reasons assigned, the judgment of the District Court is affirmed at plaintiff's cost.