**PHILLIPS v. YAZOO & M. V. R. CO.**
No. 5698.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Rehearing Denied June 30, 1938.

Writ of Certiorari and Review Denied Aug. 5, 1938.

Montgomery & Dormon, of Monroe, for appellant.

Thompson & Thompson, of Monroe, for appellee.

DREW, Judge.

This is a compensation suit. Plaintiff was in the employ of defendant, assisting in building cars to be used for hauling pulp wood, his wages being $26.40 per week. In building these cars, old ones which had been in use for general freight hauling were dismantled and torn down. The parts were then used to construct a special type of car to be used exclusively in hauling pulp wood to the different paper mills located in the vicinity of Monroe, Louisiana.

On July 1, 1936, while plaintiff was engaged in the performance of his duties, he was instructed by his superior to crawl under a car and gather up the bolts and nuts that had fallen under there, and to bring them to him to be used on a car then under construction. He obeyed orders by picking up the 5-gallon bucket and crawling under the car. After he had filled the bucket about three-fourths full, he crawled out from under the car and started to straighten up with the bucket in one hand (the bucket of bolts and nuts weighed from 60 to 75 pounds), when he felt a sharp pain in the lower region of his back, which prevented him from coming to an upright po-

sition. Plaintiff, without contradiction, describes in his own words what happened at that time:

"A. I had crawled under this car, picked up a 5-gallon paint can of bolts, probably three-quarters full, and come out from under the car, sort of on my hands and knees. The bucket of bolts was back close to the car, kind of under the car—and as I started to rise up from this kneeling position, I reached behind me,—twisted around—and took hold of the bail of the bucket of bolts. When I straightened up and lifted the weight of the bolts, I felt a sharp pain down in the lower part of my back, on down into my hips, and I set the bucket down, rather than drop it hurriedly, and tried to straighten up, and I couldn't straighten up.

"Then, I attempted to pick up the bucket of bolts again and saw that I couldn't do it, so I motioned to one of the boys working in the same gang I was. He came up and I told him I had hurt my back and couldn't carry the bolts and would he please take them down to where they needed them. He did that.

\*   \*   \*   \*   \*   \*

"Well, I hobbled on down to where they were assorting these bolts and nuts, in preparation for their use, and I squatted down there, to try to help. I told this boy, Jimmie—

\*   \*   \*   \*   \*   \*

"Yes, in just a few minutes two of the men took me over to the office and reported to Mr. Moore that I had hurt my back, and Mr. Moore, with Mr. Ellis who was, I understand, the foreman of the job, superintendent in charge of the job—and Mr. Ellis asked me if I knew an osteopath; that he believed he could do me some good, in an injury like that. I said yes, I knew an osteopath here in town, and he suggested that I go there."

He was taken to Dr. Gorsline, on osteopath, who treated him by palpitating and manipulating his back. Soon after leaving Dr. Gorsline's office, he was taken to the office of the defendant company's physician, who made an examination and ordered him taken to the Riverside Sanitarium, where the defendant maintained a ward for the use of its employees. Plaintiff remained in the sanitarium for nine days and was then allowed to go to his home in or near Rayville, Louisiana, some twenty miles away. He remained in bed at home for

about three weeks, however, once a week he reported at the office of the defendant company's physician for observation and treatment. After going home, when plaintiff first went out, he used crutches, later on he discarded them and used a walking cane, finally discarding that and walking without the aid of anything. In October, defendant sent him to New Orleans for examination and treatment by their head physician and surgeon. Defendant paid plaintiff compensation at the rate of $17.16 per week for a period of twelve weeks, then ceased payments. This suit followed, being filed on December 10, 1936, in which plaintiff contends he is totally and permanently disabled to do manual labor of any kind, and prays for judgment in the sum of $17.60 per week for a period not to exceed 400 weeks, less a credit of the twelve weeks heretofore paid by defendant.

Defendant denies that it owes plaintiff any amount. It admits paying the twelve weeks' compensation, but claims it was paid through error and the mistaken belief that plaintiff had been injured by an accident while in its employ. It further alleged that if plaintiff was injured or suffered any accident while in its employ, he has fully recovered and is well able to resume work, and that the twelve weeks' compensation paid him fully covers the period of his disability.

After trial was had below, the court, in a written opinion, rendered judgment rejecting plaintiff's demands, and he prosecutes this appeal.

The record in this case consists of nearly 400 pages of small type, the greater part of it being the conflicting testimony of eminent roentgenologists and physicians. Principally questions of fact are involved. The two questions to be determined are (1) was there an accident and injury to plaintiff? And (2) was he totally disabled by the said accident, if there was one, and if he was disabled, did his disability continue down to the time of trial in the lower court?

The lower court, after reviewing the facts and discarding as of no value to it the X-ray pictures and the testimony offered as to what they disclosed, found as a fact that there was an accident, within the intendment of the Workmen's Compensation Law of this state, Act No. 20 of 1914, and that in said accident plaintiff suffered an original injury, but held the evidence failed to show the extent of the injury or duration of same, and therefore rejected the demands of plaintiff.

The evidence is clear that plaintiff did receive an injury in an accident on the day and date alleged, and that the injury was of such a degree as to totally incapacitate him for performing manual labor for several weeks thereafter. Defendant contends there were no objective conditions and symptoms proven, as required by subsection 4, Section 18 of Act No. 20 of 1914, as amended by Act No. 85 of 1926.

■ The facts proven, which meet the requirements of that provision of the act, are: Plaintiff complained of his injury immediately after it occurred. His fellow-employees and superior recognized the fact that he was injured and assisted him to Dr. Gorsline's office. Dr. Gorsline testified that his examination revealed a severe injury to the ligaments and muscles in the area of the back, in the location of the first lumbar vertebra, and that it was his opinion a fracture or injury of the vertebra had occurred. The further facts that defendant's doctor recognized that plaintiff was injured and sent him to the sanitarium, and the testimony of the other patients in the same ward with plaintiff at the sanitarium as to his intense suffering during the nine days he was there. This testimony is clearly sufficient to meet the requirements as to objective conditions and symptoms.

The remaining question is,—was plaintiff totally disabled to perform manual labor at the time of the trial below? Defendant contends that plaintiff was not suffering from any disability at the time of trial, and relies principally upon the testimony of six doctors, some of whom made a clinical examination of plaintiff, and the others testified entirely from the X-ray pictures. The testimony of the physicians who were put on the stand by defendant is in irreconcilable conflict with that of the four doctors used by plaintiff. They absolutely interpret the same X-ray pictures differently. The physicians are all, so far as we know and as the record shows, of equal eminence and credibility, and if there is any good reason for us to take the testimony of one over the other, we do not know of it. Three of the doctors who testified for the defendant are regular company physicians, others have a large industrial practice and represent different industrial companies. We do not intend to impugn or question their veracity

upon this ground, but it is true that anyone, no matter how honest, can become warped when following one kind of practice for a long time. Regardless of this, in any case where the medical testimony is as conflicting as in this one, we are forced to look to the lay testimony for a solution of the cause. The lower court found it impossible, under the medical testimony, to determine whether there was a compressed fracture of the first lumbar vertebra or not, and apparently rejected plaintiff's demands for that reason. We are of the opinion that it is immaterial to a decision of the case whether plaintiff can prove the exact specific injury or not. If he shows that his back was injured, the location of the injury and that the injury still exists to such a degree that he is unable to perform ordinary manual labor, he has made out his case. If this were not true, it would be well to amend the Compensation Law and make a back injury not compensable, for in all cases of back injury which come to the court, we find an irreconcilable conflict of medical testimony. If plaintiff had to prove with specificness the exact part of his back that was injured, he would be left to the mercy of the medical profession which never fails to disagree as to the injury of a back.

The lay testimony is overwhelmingly in plaintiff's favor. It is shown that he has not performed any manual labor since the date of the accident; that on one occasion he assisted his father-in-law, a man in his seventies, to put a plow stock and plow in a crib out of the rain, the weight of which was about 50 pounds, and that from this light exertion he suffered all night with his back. On another occasion, plaintiff walked a few hours with two merchants out of Monroe, in an effort to assist them in finding some quail. He did not carry a gun himself. The two merchants, both men of high standing in their community, testified they noticed plaintiff was in great pain after he had been out a short while; that although it was a cold December day, the pain he was undergoing caused perspiration to break out on his forehead, and that when he was returned by them to his home, he was barely able to drag himself into the house and then only with the aid of the banisters by which he pulled himself along. He was confined to his bed for a day or two thereafter.

Just two weeks before the trial, plaintiff attempted to go rabbit hunting with a friend and, although he did not do much walking and rested ever so often, he suffered much pain afterward. Plaintiff was found of fishing and hunting. He went fishing with his wife once and suffered so much afterward with his back, that he never went again. On one occasion he attempted to crank a Ford automobile and was forced to go to bed as a result, due to the pain in his back. Two reputable lawyers of the Monroe Bar, who saw plaintiff many times between the date of the accident and the day of trial, testified as to the manner plaintiff handled himself in walking and when taking a seat or arising from a chair; that his every action showed he was suffering greatly with his back. The same kind of testimony was given by a reputable dentist of Monroe, who had occasion to see plaintiff quite often.

The lay testimony offered by the defendant, as found by the lower court, is of little assistance to it in its attempt to show that plaintiff was not disabled.

Plaintiff is either totally disabled to perform manual labor or he is an A No. 1 malingerer. The record does not justify us in finding him to be a malingerer, and we are forced to find that he was totally disabled to perform work of a reasonable character at the time of the trial below.

There is evidence in the record that his back shows some arthritic condition existing. It is shown by practically all of the medical men that an injury to the back when in that condition will often cause a dormant arthritis to flare up and give some trouble. If that is what happened, it is compensable. It is known and is shown by this record that an injury to the back in the region of the sacro-iliac is difficult for doctors to discover. The injury is often to the muscles or nerves, which will not show in an X-ray picture. A strain is often difficult to locate, and it is common knowledge that back injuries do not pass away in a fortnight and are often of long duration.

There is an abundance of testimony in the record showing that prior to the accident, plaintiff was a well man. He weighed about 200 pounds and, as one witness described him, he was a veritable "bull" for strength; that on all outings, barbecues, etc., he insisted on doing the greater part of the manual labor necessary. He was active and energetic.

Defendant made a feeble effort to show that plaintiff had suffered with lumbago

for years before the accident, but little or no weight can be attached to this testimony.

We are convinced that plaintiff has made out his case and that at the time of the trial below he was totally disabled to perform work of a reasonable character, such as he was performing at the time of his injury.

It therefore follows that the judgment of the lower court is reversed and there is now judgment for plaintiff in the sum of $17.16 per week for a period of disability not to exceed 400 weeks, less a credit of twelve weeks heretofore paid; payments to date from July 1, 1936, and for all costs.