Plaintiff, alleging himself to have been an employee of defendants, C.E. Soncrant and the Mansfield Hardwood Lumber Company, sues to recover workmen's compensation on the basis of permanent total disability. For a cause of action he avers that while performing his duties as log cutter for defendants on October 23, 1940, a tree fell and struck him on his head, neck, shoulder and back, inflicting physical injuries resulting in the disability alleged upon. He admits that he has been paid compensation in the amount of $23.40 for which credit is due defendants. He also *West Page 838 
alleges that he is under the treatment and observation of a physician and that the expenses thereof will equal or exceed $250. The right to sue for this amount he prays to be reserved to him.
The answer of the defendants, supplemented by stipulation of counsel at beginning of trial, removes from controversy all issues tendered save and except whether plaintiff is disabled and, if so, the extent of such disability. It is admitted by counsel that his weekly wage was $12 and that he had been paid $124 on compensation account. Defendants aver that the limb of a falling tree and not the tree, struck plaintiff a glancing blow about the head, from which he received "certain muscular injuries of a slight and temporary nature". It is also averred by defendants that subsequent to institution of this suit, plaintiff submitted himself to examination by medical experts of defendants' selection and that he was thereafter, pending a determination of his complaints regarding his physical condition, paid additional compensation in the sum of $101.40 without prejudice. Credit for this amount, plus the $23.40, is prayed for in the event a judgment favorable to plaintiff is rendered. Defendants disclaim liability to plaintiff in any sum beyond that which they have paid him.
There was judgment for plaintiff awarding him compensation during the period of his disability, not exceeding four hundred (400) weeks. Credit was given defendants in the sum of $124.40, being compensation for sixteen (16) weeks at the weekly rate of $7.80. The correct amount would be $124.80. Defendants appealed.
Plaintiff was sixty-six years of age when injured. He is uneducated, can neither read nor write. He has followed timber cutting exclusively for a livelihood for the past forty-five (45) years. Prior to the time of the accident he was a strong, healthy, vigorous man for his age. Describing his physical prowess, he testified: "I could buck against any negro; I did not cull nothing; I was a man among men." No one disputed him on this score. He alone gave testimony as to how he was injured. He says that he was struck by a limb attached to a large cypress tree which he and others felled; that as the tree fell the limb struck him violently on the top of his head; on his arms and shoulders; that the blow knocked him to the ground and rendered him unconscious for awhile. A wound three or four inches long above the forehead was cut in the scalp.
Plaintiff was promptly carried to Dr. Reed's office in the City of Natchitoches where the wound was sutured. He was then carried to a sanitarium and remained therein for four days. He testified that pain in his neck, head and upper part of his back has been continuous since the accident and that this symptom, plus the fact that his neck was sore and stiff, rendered him unable to perform manual labor, the only sort of work he was ever able to perform.
More than one-half dozen physicians testified in the case. Most of them examined plaintiff physically and interpreted X-ray pictures made of his neck within a short time of the accident. Notwithstanding the adverse opinion of the physicians who testified for the defendants, we are convinced that the blow to plaintiff's head fractured the fifth cervical vertebra. This vertebra forms a part of the neck. The fracture is described as being one of compression which means that the blow on the head was so violent that it had the effect of driving the vertebrae composing the cervical group against each other with sufficient force to produce fracture. At the time of trial, six months after the accident, the fracture had undergone calcification and had healed. The blow also caused injury to the cartilaginous discs between the fifth and sixth cervical vertebrae, and possibly injured the nerves of that locus, but as to this, the testimony is uncertain. It is certain, however, that at the time of trial plaintiff's neck was stiff; normal motion thereof in any direction could not be had. In addition there was present to a substantial degree the soreness that developed immediately after the injury. This hangover of soreness, it is contended, is superinduced by arthritic conditions found by nearly all of the doctors to exist in the cervical vertebrae. We feel quite certain this is correct.
Defendants contend that the mentioned arthritis was present prior to the injury; therefore, its disabling effect may not be accredited to the blow. Whether the arthritis existed at the time of the accident or developed as a result of it, for the purposes of determining the right to compensation, is immaterial. If it did exist prior to the accident, its presence was unknown to plaintiff and in no manner and to no extent did it interfere with the efficient discharge by him of his laborious *West Page 839 
duties. If the arthritis did exist prior to the accident and was thereby aggravated and aroused from a dormant state to an active one, culminating in the present degree of disability, compensation is still due plaintiff. This principle has been repeatedly affirmed by all the courts of this state. The following cases are a few of those so holding: Doane v. Board of Com'rs of Port of New Orleans, La.App., 163 So. 717; Jones v. Lake Charles Compress Warehouse Co., Inc., La.App., 153 So. 347; Stovall v. S. Bender Iron Supply Co., et al., La.App., 152 So. 387; Nelson v. Bateman Contracting Co. et al., La.App., 145 So. 808.
Dr. Reed, a witness for defendant, who administered first aid to plaintiff and also attended him while in the sanitarium, originally was of the opinion that he would be able to resume work in about two months after discharge from the sanitarium. He then observed no symptoms which indicated that plaintiff would become permanently and totally disabled. He again examined plaintiff on December 28th and found him then totally disabled to work. Plaintiff was again examined by Dr. Reed on the day of trial and the doctor gave the following enlightening testimony touching his condition at that time, to-wit:
"Q. Is there anything now that would cause you to believe that any permanent injury that he might have, disability that he might now complain of, can be traced to the accident, or is it due to old age? A. I would think it was due to the accident.
"Q. That is he — A. He evidently has an arthritic condition of the cervical region.
"Q. Would you say that was due to the injury that he received, or could it be due to age and the hyperthropic changes? A. I would naturally think that owing to the fact that it started from the time he was hurt and has persisted to the present time, that it evidently was caused from the lick.
"Q. You would say it is arthritis and that it is due to the lick? A. Traumatic injury, yes.
* * * * *
"Q. You have examined the plaintiff today; do you find that he has limitation of motion in the neck? A. Yes.
"Q. Is it a marked limitation? A. Very marked.
"Q. In your opinion, is it due to the accident which he had on October 23rd last year? A. I would say yes, taking into consideration the history of the case.
"Q. Is it not a fact that whether he will ever recover is problematical? A. You will just have to guess at it; one man's guess is as good as another's.
"Q. He is not able to be a log cutter and tie hacker now? A. No."
The doctors who testified for plaintiff fully concur in the opinion of Dr. Reed, reflected from the above quoted testimony. The trial judge experienced no difficulty in reaching the conclusion that plaintiff was entitled to recover compensation on the basis of being totally disabled and gave written reasons therefor. We find ourselves in complete harmony with him.
It is the opinion of some of the physicians that plaintiff's ailments could possibly be relieved by appropriate medical treatment. His right to sue the defendants for the expenses of such treatment, should he decide to undergo the same, to the amount fixed by law, was reserved to him in the judgment appealed from. This was eminently correct.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.