Plaintiff, an illiterate colored man, age fifty-six, seeks judgment against International Creosoting and Construction Company, and the Travelers Insurance Company, alleged carrier of its workmen's compensation insurance, for $20 per week for four hundred weeks and for medical and hospital expenses, on the theory that he is permanently totally disabled to do work of a reasonable character, the result of an accident to him while in the immediate employment of or while working under one C. J. Davis, "an employee, agent or contractor of said International Creosoting and Construction Company". He alleged that he was injured by a cross tie, at the time being loaded by him into a box car, falling against his right leg, fracturing the fibula, and severely injuring the tissues, ligaments, tendons, etc. about the locale of the fracture; that said cross tie and others, then being loaded into the box car by said Davis were the property of said International Creosoting and Construction Company who had employed plaintiff to load them; that the business of said International Creosoting and Construction Company *Page 689 
is hazardous within the meaning of the Workmen's Compensation Law.
The defendants deny that the business of the International Creosoting and Construction Company — that of purchasing cross ties — is hazardous under the Workmen's Compensation Law. Act No. 20 of 1914. They also deny that plaintiff was directly or indirectly in the employ of the International Creosoting and Construction Company and deny that said Davis was an agent, employee or contractor of said International Creosoting and Construction Company. They aver that the relationship of the International Creosoting and Construction Company and said Davis was that of seller and purchaser "under written purchase order or agreement to purchase from C. J. Davis, cross ties when loaded upon freight cars by the said C. J. Davis"; that under said written purchase order the International Creosoting and Construction Company proposed to purchase and become the owner of only such cross ties as should be loaded free on board of freight cars, which ties were to be accepted and paid for on receipt of proper bills of lading.
Plaintiff's demand was rejected and his suit dismissed at his cost. The court gave written reasons to support its judgment. Plaintiff appealed.
It is plaintiff's primary contention that the relationship between Davis and the International Creosoting and Construction Company, involving the purchasing, checking and loading of cross ties into railroad cars was that of employer and employee, and that plaintiff was also an employee of the said International Creosoting and Construction Company; that the modus operandi between them, alleged and testified to, was nothing more than a subterfuge to conceal the true relationship between the parties and to escape liability to injured workmen under the Workmen's Compensation Law.
Davis was employed by the International Creosoting and Construction Company at a salary of $85 per month. His duties were to spot and paint ties and hammer brand each with the initials "ICC". He was carried on the pay roll as an outside buyer and notwithstanding he was paid a salary he purchased and had manufactured ties that he intended to and did sell to the International Creosoting and Construction Company on written orders from it, which orders will be discussed fully hereinafter.
On February 1, 1947, thirteen days prior to plaintiff being hurt, the business relationship between Davis and the International Creosoting and Construction Company in part was changed. He was taken off of salary and for compensation for his services to the International Creosoting and Construction Company under written orders and otherwise, he was allowed ten cents per tie, which amount was retained until after the ties were shipped by rail to the International Creosoting and Construction Company. Under orders prior to February 1, 1947, an amount less than ten cents per tie was retained from the price, after inspection, to insure loading into cars.
The referred to written order of February 1, 1947, like prior orders, is in the form of a letter, signed by the manager of the tie and timber department of the International Creosoting and Construction Company, directed to Davis, which began as follows, to wit: "You may enter our order for ties in car lots f. o. b. cars KCS Railway at Noble to Many station, at the following prices * * *". Then follows the sort of timber from which ties are to be made, the several grades of ties acceptable, and the price to be paid for each grade, f. o. b. cars.
It is also stated in said order that the ties were to be inspected at said stations immediately after which they were painted in such manner as to reflect the grade of each, hammered, and loaded into cars. The price of each, less ten cents, was then paid to Davis. It was his duty immediately after the inspection, etc. to load the ties into a car provided by the railroad, bill same to the International Creosoting and Construction Company at Texarkana, Texas, via KCS Railway. When all of this had been done and Davis had delivered by mail to the International Creosoting and Construction Company the original bill of lading with statement of the ties loaded, showing grade and kinds of ties, a check for the *Page 690 
retained ten cents for each tie was mailed by the company to him.
To fill orders Davis had ties manufactured and purchased others from whom he pleased; hired, fixed the wages of and: paid the expense of loading. The plaintiff did the loading for him over a period of several years, and, no doubt, was his employee.
The change in the business relationship with Davis on February 1, 1947, it is explained, was due to the return of normal conditions after the war. It is said that during the period of the war and for some time thereafter it was found, due to the scarcity of competent men, necessary to salary those employees who performed the character of service that Davis rendered.
The established facts warrant the conclusion that the ties remained the property of Davis until they were inspected, graded, hammered, etc. and Davis paid the price thereof, less ten cents per tie. When all these acts had been performed the ownership of the ties henceforth vested in the International Creosoting and Construction Company.
The purchase orders, supplemented by testimony reflecting the modus operandi thereunder, in our opinion, establish the relation of seller and purchaser between Davis and the International Creosoting and Construction Company. Of course, the business of buying cross ties is non-hazardous. The business of manufacturing them, it is well established by the jurisprudence of this state, is hazardous. Such business comes within "logging and lumbering" which is declared by the Workmen's Compensation Law to be hazardous.
It is clear, therefore, that plaintiff had a cause of action against Davis, his employer, to recover compensation for his injuries.
The question arises: Can this cause of action be legally extended to include the company?
In the case of Hinton v. Louisiana Central Lumber Co., La. App., 139 So. 554-557, the term "logging" is defined to be "The business of felling trees, cutting them into logs, and transporting the logs to sawmills or market". The Supreme Court in Hogan v. T. J. Moss Tie Company et al., 210 La. 362-369,27 So.2d 131, 134, said: "Undoubtedly, one engaged in an occupation that requires the felling of trees, sawing them into crossties, hewing them into crossties, and transporting them, comes with this provision."
In this decision the Court adopted the definition of logging as defined in the Hinton case, supra.
It is apropos to ask, and upon the answer thereto depends plaintiff's right to compensation, — what acts are embraced within the term "transportation"? We know that moving the ties from the woods, where manufactured, to a railroad right-of-way or yard, is clearly included therein, and we also know that after being loaded on cars or trucks that carry them to their ultimate destination, also comes within the term. Is it not reasonable and logical to also include, as an element of transportation, the act of carrying the ties from the railway right of-way or yard into and depositing them in cars for shipment? We think so. As said before, the ties belonged to the company and it was Davis' duty as contractor to deliver them into cars, and to perform the manual labor necessary to accomplish this, plaintiff was employed. This act in the chain of events was being done for the company and it was as important to its interest, and possibly more so, than any other act that played a part in the delivery and transportation of the ties. To that extent the company's business, as respects these ties, was hazardous.
The facts of this case and our findings bring it within the operative effect of Section 6 of Act 20 of 1914, as amended, which reads, in part, as follows: "That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that *Page 691 
employee had been immediately employed by him".
We are of the opinion that this case falls without the rule laid down in the several cases cited in the opinion of the lower court, to wit: Hatch v. Industrial Lumber Company, et al., La. App., 199 So. 587; Perkins v. Hillyer Deutsch Edwards, Inc., et al., La. App., 199 So. 590; Vincent v. Industrial Lumber Company, et al., La. App., 199 So. 593; Reed v. J. W. Jeffries Lumber Company, et al., La. App., 9 So.2d 87; Williams v. George, et al., La. App., 15 So.2d 823.
Immediately after the accident plaintiff was carried to the office of Dr. Lloyd H. Murdock, who reduced the fracture and applied a cast. Different kinds of casts were used over a period of four months. He continued to visit the doctor every two or three days. Later, swelling about the wound developed which required diathermy treatments to bring it under control. The last of such treatments was on November 18, 1947, some ten months after the accident.
Prior to the date of the accident, plaintiff's knee joints were affected with arthritis, in an advanced stage, but this condition did not prevent him from efficiently loading heavy crossties into box cars. His ability to do this sort of labor attracted the attention of many persons, including Dr. Murdock.
At the date of trial, it was Dr. Murdock's opinion that there existed no total disability because of the fracture. X-ray pictures disclosed satisfactory union. The alignment was splendid. But it is certain that because of the wearing of the cast, with consequent physical inactivity, the bruising of the flesh and tissues, and the disturbance of blood circulation, the pre-existing dormant arthritis in both knees was aroused. It has been activated to the degree that plaintiff is no longer able to handle cross ties, a line of work he followed exclusively for twenty years; and the record clearly discloses him to have been a skillful master at that job.
Citation of authorities to sustain the right to compensation because disability to work has resulted from trauma that arouses to a state of activity a pre-existing dormant disease, is unnecessary.
Plaintiff testified that although the wound had healed there was continuous pain in and about the locale of the fracture. He and Dr. Murdock testified that at the time of trial the leg would swell and become more painful and sensitive in the evening, when stood upon during the day.
Dr. Murdock was not asked to give his opinion as to the duration of plaintiff's disability; and we doubt, in view of the apparent care he evinced in answering the questions propounded to him, that he would have ventured one. Arthritis ranks among those maladies deemed to be incurable although its disabling effects may at times be reduced. In view of this situation and of the law which provides that payments of compensation may be terminated upon cessation of the disability, we believe the judgment we shall render herein appropriate, especially in view of the fact that we have found that at the date of trial plaintiff's disability was total.
Plaintiff is due Dr. Murdock for treatment of the wound, $139.
It was not proven that the Travelers Insurance Company carried workmen's compensation insurance on its co-defendant's employees. In paragraph one of the petition it is affirmatively alleged that such was the case, but the allegation is denied. No evidence was introduced to prove plaintiff's allegation on this score.
For the reasons herein given, the judgment from which appealed is annulled, avoided and reversed; and for said reasons it is now ordered, adjudged and decreed that plaintiff, Isaiah Anderson do have and recover judgment against the defendant, International Creosoting and Construction Company, for workmen's compensation at the rate of $20 per week, for the period of his disability, not exceeding, however, four hundred weeks, the first payment having been due on February 20, 1947; with legal interest on each payment from due date thereof.
It is further ordered, adjudged and decreed that plaintiff also have judgment against said defendant in the sum of $139 for physician's services. The right to claim and sue for additional amounts on this phase of the case, if necessarily incurred, *Page 692 
not exceeding in all $500, is reserved to plaintiff.
The fee of plaintiff's counsel herein is fixed at twenty per cent of all amounts collected under this judgment, not exceeding, however, a total of $1,000. Defendant is cast for all costs of court.