**Dan M. WILLIAMSON**

v.

**TRAVELERS INSURANCE COMPANY.**

**Civ. A. No. 5628.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Jan. 23, 1957.

Harry V. Booth, and John R. Pleasant, Booth, Lockard, Jack & Pleasant, Shreveport, La., for plaintiff.

John C. Theus, Theus, Grisham, Davis & Leigh, Monroe, La., for defendant.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

Filed in the State Court, and removed here [1] by defendant on grounds of diversity of citizenship,[2] with more than $3,000 being in controversy,[3] the action is for weekly benefits of $30 each during plaintiff's alleged disability, not to exceed 400 weeks, under the Louisiana Workmen's Compensation Law, LSA–R. S. 23:1021 et seq.

The background facts are not in serious dispute, the single issue being whether plaintiff's present total disability, which is practically conceded and is presumably permanent, is the result of a compensable accidental injury, as he contends, or of pre-existing disease, as defendant urges.

On September 20, 1955, plaintiff was 63 years of age, having been born in April, 1892. There is no question but that he had a condition of osteoarthritis in his back and hips on and prior to that date. However, he had not suffered any disability from this. He had been working regularly since November, 1952, for defendant's insured, Remington Rand, Inc., operator of the Louisiana Ordnance Plant in Webster Parish, Louisiana, his weekly wage being $74. His duties were those of a railroad car-inspector, requiring him to inspect fairly large numbers of freight cars used in transporting raw materials into the plant, and finished products from the plant. On the usual work day, he inspected an average of approximately 30 cars. In doing so, he was required to walk along railroad sidings where the cars were spotted; he would stoop or squat, or crawl beneath the cars, in order to check the brakes, running gear, floor decking, etc.; he would climb the steel ladders affixed to the cars to inspect the roofs; and he also would inspect their interiors. In order to perform this latter duty, he carried with him a steel crow-bar approximately three feet long, to be used in opening car doors, and a small portable ladder about five or six feet in length, upon which he would climb to the car floors. Approximately 80 to 90 per cent of all freight car doors were hard to open, requiring heavy exertion, it sometimes being necessary that plaintiff and his assistant enlist the help of other men in order to get them open.

On September 20, 1955, while performing his regular duties in the course and scope of his employment, plaintiff had inspected the inside of a freight car and, while checking a possible defect in its floor decking, he accidentally fell backward from the car floor to the ground, a distance of four to five feet, landing upon his hips and lower back, the jar of the fall being hard enough to break the artificial dentures he was wearing in his mouth. He was somewhat stunned, and immediately felt a marked degree of pain in his back, hips and right leg, with numbness and weakness in that extremity. After lying on the ground for several minutes, he succeeded in lifting himself to his feet and managed to continue his duties, with difficulty, until his regular hours of work for that day came to an end. There were no witnesses to the accident, but he immediately reported it to Mr. Leon Bordelon, one of his superiors in the Railroad Department, showing him his broken dentures, and on the next day reported it to his immediate supervisor, Mr. R. W. Kelly. Defendant

1. 28 U.S.C.A. § 1441.

2. 28 U.S.C.A. § 1332.

3. Strickland v. W. Horace Williams Co., 5 Cir., 230 F.2d 793.

does not seriously dispute that the accident actually occurred as we have described it; and paid plaintiff compensation at the rate of $30 per week, until June 18, 1956.

Thinking that he perhaps had not been injured seriously, and that the immediate pain and disability would subside by the next day, he went home, returning to the job on September 21. At that time, he found he was in too much pain to continue, so then reported to the plant first-aid station, where he was examined by Dr. S. E. Potts, the plant physician. Neither side called Dr. Potts to testify in the case. He apparently administered heat or diathermy treatment to plaintiff, who then went to his family physician, Dr. B. L. Cook, of Minden, Louisiana.

Dr. Cook immediately placed plaintiff in the Minden Sanitarium, where he was put in traction and given various treatments for a period of approximately six days, following which he was allowed to return to his home. Having shown no improvement, and, in fact, having grown worse, Dr. Cook sent him to Shreveport where, on October 5, 1955, he was examined by an orthopedist, Dr. Ford J. MacPherson. That doctor placed him in a Shreveport hospital where he remained under treatment until November 4, 1955.

Dr. MacPherson's findings at his first examination are epitomized by the following extract from his testimony:

> "The clinical impression that was gained in this patient was that he had sustained an acute tearing injury to the soft tissue structures around the bones of his low back, in an old man with advanced arthritic changes and structural defects."

Dr. MacPherson again examined him at his office on November 4, 1955, and dismissed him to return to his previous occupation on or about November 7. At that time, the doctor did not believe plaintiff would have any permanent partial disability. He reported this to defendant. However, when plaintiff went back to the Ordnance Plant on November 7 and Dr. Potts found he still was wearing a back brace, fitted for him upon Dr. MacPherson's orders, he would not permit him to return to work, telling him to come back in thirty days. Meantime, plaintiff returned to Dr. Cook, who has continued to treat him as an out-patient since that time.

Meanwhile, on October 10, 1955, while plaintiff was confined in the Shreveport hospital, he suffered an attack of auricular fibrillation, which in lay language means that his pulse, or heart beat, was quite rapid and irregular, although his blood pressure was within normal limits for a man of his age. At that time he was examined by Dr. Robert P. Bays, an internist, who found that he probably had an arteriosclerotic heart condition, of which the irregular pulse was a temporary manifestation. The latter condition cleared up within a relatively short time, and had disappeared entirely before plaintiff was released from the hospital.

Dr. Cook is of the opinion, after having examined and treated plaintiff over a substantial period of time, that, irrespective of the heart condition, plaintiff is totally and permanently disabled as the result of trauma sustained by him in the accident of September 20, 1955, which aggravated or excited the pre-existing condition of osteoarthritis in plaintiff's back and hips. The evidence conclusively shows that this had not caused him any pain or disability prior to the date of the accident.

Dr. MacPherson re-examined plaintiff on December 4, 1956. He testified that, while he previously had discharged plaintiff in November, 1955, as then being able to return to work, he has changed his views and now is of the opinion that plaintiff is totally and permanently disabled as the direct result of the accident of September 20, 1955. His present findings are as follows:

> " * * * The only conclusion that could be drawn from this old gentleman was that he undoubtedly sustained an injury to his low back, tearing the para-articular [peri-articular] soft structures of his low

back which caused him pain and this apparently has affected him psychologically so that he now has a rather severe hysterical fixation on this, and it is absolutely impossible to tell just how much pain he is having, but objectively he shows no signs of nerve root involvement, and *the only conclusion I can make is that his injury aggravated his pre-existing arthritis* and that this has set up a psychic effect in this old gentleman, and I cannot ascertain exactly or even guess at how much pain he is really having at this time. He stated that activity certainly aggravated it and this cannot be denied or proven to be true. (Emphasis supplied.)

\* \* \* \* \*

"\* \* \* This old gentleman with this amount of arthritis in a pretty stiff back, and remember too that he had these structural defects, and hitting as hard as he says he hit and fell as far as he did *he undoubtedly tore some of the soft tissue wrappings, the capsules, the little short ligaments that are quite brittle in these old people. He undoubtedly tore them and made them painful. They will hemorrhage around there and unfortunately the X-ray will not show this type of damage. When he was first seen he did have a stiff back and painful spasm."* (Emphasis supplied.)

When Dr. MacPherson was asked his opinion as to whether plaintiff could perform the duties of his former employment with defendant's insured, "\* \* \* now or at any foreseeable time in the future \* \* \*.", he answered, "No sir". He stated that his final conclusions as to plaintiff's case were these:

"I realize it seems to be a very shallow opinion, but these are old people with poor recuperative powers, and on top of it he has multiple mechanical disadvantages, and *if this old gentleman persists in complaining of pain I cannot deny it,* and if he relates it originally to the time of

his injury with a statement that it has persisted, and I do know that *for an interval of time he did have pain, which was unquestionable, and if he now has even a mild degree of pain I doubt if he could do this active arduous labor. I sincerely do.* The old gentleman impressed me, and this is purely psychological, but *he impressed me with his sincerity,* and with the fact that this thing has apparently almost frightened him down and has finished him psychologically as much as physically, I doubt if he will ever go back. \* \* \* With this little superimposed injury that you can say is *the straw that broke the camel's back."* (Emphasis supplied.)

With regard to the change in his original opinion that plaintiff's disability had terminated when he was discharged on November 4, 1955, the following colloquy is illustrative:

"Q. That little injury you speak of, that was just a temporary disability that terminated when you discharged him from the hospital on or about November 4, 1955, did it not? A. I thought so at the time, sir.

"Q. Have you changed your mind on that? A. Yes, sir, I think this old man probably has a little bit of pain now even at rest \* \* \*."

A number of lay witnesses, who have observed plaintiff before and since the accident, testified that his appearance has changed from that of a man who apparently was happy, active and fully able to perform his work to one who obviously is suffering and unable to work. It is not disputed that he has lost about 30 pounds in weight. Even his superiors at the plant attest to his honesty and sincerity. They also stated that his work prior to the accident was entirely satisfactory. While the testimony of all witnesses other than plaintiff was taken by deposition, he testified before us in person and we must state that we, too, were impressed with his obvious integrity and

sincerity. We are convinced that his complaints are genuine.

Plaintiff was examined at defendant's behest, but not treated, by Dr. Carson R. Reed, an orthopedist of Shreveport, on January 10, 1956, February 28, 1956, and April 26, 1956. He testified it is his opinion that plaintiff's present disability is the result of his pre-existing arthritis, and that he should have recovered from any injuries or aggravation of the arthritis within six months following the accident. He admitted, however, that if he were examining plaintiff for employment in the type of work he was doing when the accident occurred, "I wouldn't have hired him in the first place"; and also admitted that he would not hire him now, nor would he medically approve his being hired.

Moreover, his opinion that plaintiff could return to "light work" within six months following the accident simply does not hold up in the face of the fact that at least some of plaintiff's duties, especially in opening freight car doors and in climbing upon the cars, were not "light" but were quite heavy, requiring strong and repeated exertion. He admitted that plaintiff, if genuinely suffering pain (which he could not rule out), " * * * couldn't possibly do it [the work of a car-inspector]"; and the doctor conceded that since " * * * his X-rays show such marked arthritis that the presence of pain certainly would not be surprising". Dr. Reed admitted that plaintiff seemed sincere, and that he had no reason to doubt his history of pain from the accident.

■■ Considering all of the medical and lay testimony, we think the proof is reasonably conclusive that plaintiff's present condition resulted from the accident of September 20, 1955, such proof exceeding even the rigid test of sufficiency enunciated in McCary v. Pugh, La. App., 70 So.2d 708, relied on by defendant. Upon the record here presented, we must find that plaintiff is totally disabled from performing the duties of his former employment, and this condition appears to be permanent, with little or no hope of improvement. Therefore, we have no alternative but to award him judgment. The Louisiana Courts in many cases have held that the benefits of the Workmen's Compensation Law are due to persons, such as plaintiff, who because of an accident sustained in the course and scope of their employment have suffered an aggravation of a pre-existing, but dormant, condition of arthritis.[4] We are bound to follow that jurisprudence.

Accordingly, there will be judgment for plaintiff for compensation benefits, at the rate of $30 per week from June 18, 1956, the date when previous compensation payments were stopped, during the continuation of his disability, not to exceed four hundred weeks from September 20, 1955. The claim for penalties will be denied.

Proper decree should be presented for signature.

4.  Roy v. Guillot, La.App., 84 So.2d 469; Anderson v. International Creosoting & Construction Co., La.App., 41 So.2d 688; Phillips v. Le Blanc Bros. Contracting Co., La.App., 17 So.2d 36; Bynog v. ▬▬

Mansfield Hardwood Lumber Co., La. App., 4 So.2d 837; Phillips v. Yazoo & M. V. Railway Co., La.App., 183 So. 43; Schneider v. Travelers Insurance Co., La.App., 172 So. 580.